IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

INSTITUTE OF MANAGEMENT AND
ADMINISTRATION, INC.,

        Plaintiff,

   v.

        Civil Action No.  8:05-CV-01853-AW

BROADBAND INTELLIGENCE, INC.
AND CYNTHIA BRUMFIELD,

        Defendants.

---

## MEMORANDUM OPINION

This action concerns a dispute between Plaintiff Institute of Management and Administration, Inc. ("IOMA" or "Plaintiff") and Defendants Broadband Intelligence, Inc. ("BII") and Cynthia Brumfield ("Brumfield") (collectively, "Defendants") for various state and federal law claims relating to Defendants' alleged breach of non-compete agreements, misappropriation of trade secrets, federal unfair competition, common law trademark infringement and unfair competition, and common law breach of the duty of loyalty. Now pending before this Court are three motions: (1) Plaintiff's Motion for Leave to File an Amended Complaint; (2) Plaintiff's Motion to Dismiss Counts II, III, and IV of BII's Counterclaims; and (3) Plaintiff's Motion to Dismiss Counts III, V, and VI of Brumfield's Counterclaims. Plaintiff's motions and the oppositions to the motions have been fully briefed.  The Court has reviewed the pleadings and determined that no hearing is necessary. *See* Local Rule 105(6) (D. Md. 2004).  For the reasons stated below, the Court will grant Plaintiff's motions to dismiss and grant-in-part and deny-in-part Plaintiff's motion for leave to file

1

an amended complaint.

## FACTUAL & PROCEDURAL BACKGROUND

This Court has already summarized the relevant facts in this case in a Memorandum Opinion dated January 25, 2006. Brumfield was the founder of BII, which published Broadband Daily, a newsletter that generates reports on the telecommunication industry. Brumfield sold the assets of BII, including Broadband Daily, to Pike & Fischer ("P&F"), which subsequently merged with IOMA. As part of the sale of BII's assets, BII and Brumfield signed non-compete agreements with P&F, effective for three years from the closing date of the sale and for one year following the completion of her employment at P&F, respectively. On or about November 17, 2003, Brumfield assumed a senior management position at P&F but was terminated on February 23, 2005. On March 21, 2005, Brumfield announced, via email to several parties, the creation of Broadband Insight, a intellectual property ("IP") media consulting and publication company. On July 8, 2005, Plaintiff filed a six-count Complaint with this Court, alleging breach of non-compete agreements, misappropriation of trade secrets, federal unfair competition, common law trademark infringement and unfair competition, and common law breach of the duty of loyalty. On July 21, 2005, Brumfield created a new corporation, Emerging Media Dynamics Inc. ("EMDI"), which is also involved in IP media consulting and publication. On January 25, 2006, this Court granted Defendants' Motion to Dismiss the breach of contract claims against BII and Brumfield and denied Defendants' Motion to Dismiss the claims of misappropriation of trade secrets, federal unfair competition, common law trademark infringement and unfair competition, and common law breach of the duty of loyalty. In that Order, the Court also denied Defendants' Motion for Attorney's Fees, which was brought pursuant to section 43(a) of the Lanham Act. In the instant motions, Plaintiff seeks the dismissal

of identical counterclaims brought by each Defendant for attorney's fees pursuant to MUTSA and

section 35(a) of the Lanham Act.  Plaintiff also seeks to dismiss Defendants' identical counterclaims

for an accounting, which BII and Brumfield brought so that they can compute the revenues IOMA

owes to them individually pursuant to the Agreement for Purchase of Publishing Assets and the

employment agreement, respectively.[1]  In its Amended Complaint, Plaintiff seeks to cure its breach

of contract claims against Brumfield and BII, to add a claim for civil conspiracy, and to add EMDI

as an additional defendant.

### STANDARD OF REVIEW

A. PLAINTIFF'S MOTION TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a claim in

a complaint.  *Chertkof v. Baltimore*, 497 F. Supp. 1252, 1258 (D. Md. 1980).  A complaint should

not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts that

would entitle him to relief.  *Faulkner Advertising Assoc. v. Nissan Motor Corp.*, 905 F.2d 769,

771-72 (4th Cir. 1990).  When ruling on a Rule 12(b)(6) motion, the court must accept as true the

allegations contained in the complaint and liberally construe the complaint as a whole.  *Finlator v.*

*Powers*, 902 F.2d 1158, 1160 (4th Cir. 1990).

B. PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Leave to amend a complaint should be given when justice requires.  Fed. R. Civ. P. 15(a).

However, when an amendment would prove to be futile or would serve no legitimate purpose, a

---

[1] Plaintiff does not presently challenge Defendants' counterclaims for breach of contract, which allege that Plaintiff failed to pay BII royalties pursuant to the Agreement for Purchase of Publishing Assets and failed to pay in full the amounts due to Brumfield under her employment agreement.

request to amend should not be granted. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.

1986).  Granting leave to amend is futile if the amended complaint fails to state any claim upon

which relief can be granted.  *Kandel v. Smoker*, 783 F. Supp. 948, 948 (D. Md. 1991).  For this

reason, the "standard for analyzing the claims in the original and amended complaints is the same."

*Jordan v. Alternative Resources Corp.*, No. Civ.A. DKC 2004-1091, 2005 WL 736610, at *3 (D.

Md. 2005) (unreported) *vacated on other grounds* (Jul 05, 2006).

## ANALYSIS

A. PLAINTIFF'S MOTIONS TO DISMISS

Plaintiff seeks dismissal of Defendants' claims for attorney's fees, which have been brought

under MUTSA and the Lanham Act.  A request for attorney's fees can be brought by the prevailing

party and is granted at a court's discretion.  *See Larsen v. Terk Technologies Corp.*, 151 F.3d 140,

149-50 (4th Cir. 1998) ("Section 35 confers a great deal of discretion on a district court in fashioning

a remedy for Lanham Act violations.") (citing *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d

903, 917 (Fed. Cir. 1984)); *see also Contract Materials Processing, Inc. v. Kataleuna GmbH

Catalysts*, 222 F. Supp. 2d 733, 744 (D. Md. 2002) ("Under the Maryland Uniform Trade Secrets

Act, a court may award reasonable attorney's fees to a prevailing party if the claim of

misappropriation of trade secrets was brought in 'bad faith.'")  As there is no prevailing party at this

stage in the proceeding, Defendants' claims for attorney's fees will be dismissed.

The claims for an accounting brought by Brumfield and BII will also be dismissed, because

the information that Defendants seek is attainable through discovery.  *See Johnson v. Bugle Coat,

Apron & Linen Service, Inc.*, 60 A.2d 686 (Md. 1948) ("Whereas an equitable claim for an

accounting once served a necessary discovery function, that function has been superseded by

modern rules of discovery.") (*cited in Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Com'rs*, 843 A.2d 252, 308 (Md. App. 2004)).  In Count I of their respective counterclaims, Defendants each assert a cause of action for breach of contract, which Plaintiff has not, at this stage, challenged.  Defendants offer no reason why this case is not subject to the general principle that discovery, in conjunction with a breach of contract claim, is co-extensive with a request for an accounting.  During discovery, Defendants can file a motion to compel, if necessary, in order to procure the information they seek.  Defendants may seek permission to reassert these counts should circumstances arise during the course of this litigation warranting reconsideration of the dismissal of the claims for accounting.

B. PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

In its proposed Amended Complaint, Plaintiff alleges that BII, through the now defunct Broadband Insight, published IP Media Monitor, a publication that contains subject matter prohibited by the  non-compete agreement.  In its previous Order, this Court dismissed Plaintiff's original claim against BII because the facts alleged, as viewed in a light most favorable to Plaintiff, only demonstrated a possible intent on the part of BII to breach the non-compete covenant, and not any actual breach.  This Court declined to consider information that Plaintiff presented pertaining to IP Media Monitor because such information was first presented in a reply brief, although this Court invited Plaintiff to amend its Complaint.  This Court now finds the amended claim against BII sufficiently pled, as the claim has a specific factual basis.

Plaintiff also alleges that EMDI provides similar services and products as Broadband Insight and that EMDI was formed for the purpose of avoiding the restrictive covenants between IOMA and BII.  Specifically, Plaintiff alleges that EMDI has replaced Broadband Insight as the publisher of

IP Media Monitor.  Although Defendants maintain that EMDI is an independent corporate entity and not subject to the non-compete provisions, the agreement which BII signed states that BII would not "directly or *indirectly* . . . participate . . . through any corporation . . . in the publishing of any 'publication' . . . dealing with the same subject matter as any of the Publishing Assets" (emphasis added).  Obligations under a non-competition covenant may not be avoided by organizing a corporation to conduct anew the business activity restricted by the covenant.  *See, e.g.*, *Schnucks Twenty-Five, Inc. v. Bettendorf*, 595 S.W.2d 279, 281 (Mo. Ct. App. 1979); *see also Montgomery Web Co. v. Dienelt,* 19 A. 428, 431 (Pa. 1890) ("A corporation cannot change its name, or assume the form of a new corporation, and thus escape its obligations.").  Consequently, this Court will grant Plaintiff's request to include EMDI as an additional defendant.

Plaintiff also seeks to add an additional claim of civil conspiracy.  Civil conspiracy is not an independent action, but requires the assertion of an underlying wrong upon which the conspiracy is based.  *Mackey v. Compass Marketing, Inc.*, 892 A.2d 479, 485 (Md. 2006).  The underlying wrong that is alleged can be a tort, breach of contract, or other actionable wrong.  *Columbia Real Estate Title Ins. Co. v. Caruso*, 384 A.2d 468, 472-73 (Md. App. 1978).  In addition, a plaintiff alleging civil conspiracy must show an agreement or understanding between two or more persons to accomplish an illegal act.  *Hoffman v. Stamper*,  843 A.2d 153, 178 (Md. App. 2004), *rev'd on other grounds by Hoffman v. Stamper*, 867 A.2d 276 (Md. 2005).  Defendants challenge the conspiracy claim on the ground that EMDI and BII are operated by the same agent, Brumfield, and thus cannot conspire with each other.  A principal and an agent cannot conspire together when the agent acts within the scope of his employment.  *Harnish v. Herald-Mail Co.*, 286 A.2d 146, 152-53 (Md. 1972).  EMDI and BII are, however, separate corporate entities, and thus Plaintiff's allegation

satisfies the two person conspiracy requirement.  Moreover, because this Court finds Plaintiff has adequately pled its breach of contract claim against BII, there exists in the Complaint an underlying wrong upon which the civil conspiracy is based.  *See Checket-Columbia Co. v. Lipman*, 94 A.2d 433, 437 (Md. 1953) ("[I]f a convenantor associates with others in a conspiracy to violate his covenant, his conduct entitles the covenantee to recover against the conspirators any damages he has sustained resulting from the breach.").  For these reasons, Plaintiff's request to add a claim of civil conspiracy will be granted.

Finally, Plaintiff seeks to re-plead its claim against Brumfield for providing consulting services to individuals who were P&F clients at the time of Brumfield's termination in violation of the non-compete agreement.  Plaintiff still has not adequately identified a P&F client who has received consulting services from Brumfield.  *See Shapiro, Olesky & Co. v. Cohen*, 2003 WL 21654161, at *2 (N.D. Ill. 2003) (denying a 12(b)(6) motion because the complaint included an allegation that defendant performed services for a specific former customer).  Instead, Plaintiff essentially claims that Brumfield violated the non-compete agreement by violating the non-compete agreement.  Facts, and not legal conclusions, should be alleged in the pleadings.  *See Memphis & St. L.R. Co. v. Loftin*, 105 U.S. 258, 260 (1881) (in an action to prove the tax exempt status of certain land on the basis that the land was represented by capital stock, it was not enough for the plaintiff to assert the land was represented by capital stock, but rather the plaintiff needed to set forth "facts showing why the lands represented the capital" stock).  On this basis, Plaintiff's Motion for Leave to File an Amended Complaint asserting a claim against Brumfield for breach of contract will be denied.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Dismiss Counts II, III, and IV of BII's Counterclaims [26] and Motion to Dismiss Counts III, V, and VI of Brumfield's Counterclaims [28] shall be GRANTED. Plaintiff's Motion for Leave to File an Amended Complaint [31] shall be GRANTED-IN-PART and DENIED-IN-PART. Specifically, Plaintiff shall be permitted to file an amended complaint that asserts a claim against BII for breach of contract and a claim against BII, Brumfield, and EMDI for civil conspiracy. However, to the extent that the amended complaint seeks to replead the previously dismissed claim against Brumfield for breach of contract, Plaintiff's Motion for Leave to File an Amended Complaint shall be denied.  An Order consistent with this Memorandum Opinion will follow.

August 9, 2006                                    _____/s/_____
                                                  Alexander Williams, Jr.
                                                  United States District Judge